# CIRCUIT COURT OF THE CITY OF NORFOLK

William Watlington

v.

Progressive Classic
Insurance Co. et al.

April 4, 2013

Case No. (Civil) CL12-2468

BY JUDGE EVERETT A. MARTIN, JR.

At the end of the trial of February 26, I asked if counsel wished to argue that day or submit briefs. Counsel elected to submit briefs, and I have reviewed them. I do not believe oral argument is necessary.

The plaintiff has filed this declaratory judgment action seeking a determination that the amount of underinsured motorist's ("UIM") coverage available to him under a business auto policy Ace American Insurance Company ("Ace") issued to his employer, Terminix, is the same as the limit of liability. Counsel agree the primary coverage is that provided by Farmer's Insurance Group to the vehicle Keona Coleman was driving at the time of the accident, in which the plaintiff claims to have been injured. That policy has a limit of $25,000 per person.

Counsel also agree that Ace's policy provides secondary coverage. Counsel disagree on the amount of that coverage. The plaintiff claims $1,000,000 in coverage because the policy in effect at the time of the accident was a new policy and Terminix did not properly reject the higher UIM coverage. Ace claims Terminix selected a lower combined UIM coverage of $70,000. Answer, paragraphs 6, 7. Ace sought leave to file an amended answer also claiming that the policy in dispute was a renewal policy and that Terminix was not therefore required to affirmatively elect a lower coverage limit. Another judge of this Court twice denied leave to amend, but the renewal policy issue was argued at trial and on brief and, on the facts of this case, is difficult to separate from the rejection of higher coverage issue.

It seems Terminix first contracted for business auto coverage with Ace in December of 2004. I refused Defendant's Exh. 5, however, because it was not a complete copy of the policy. Defendant's Exh. 4, which was admitted without objection, was Terminix's business auto policy with Ace for the period December 31, 2005, through December 31, 2006. Its first page states "Renewal" at the top. It contains a signed but undated form entitled "Selection of Limits for Uninsured/Underinsured Motorists Coverage (Virginia)," on which Terminix selected UIM coverage of $25,000/50,000/20,000. It also contained endorsement 7, which provided the UIM coverage in Virginia was $70,000. I do not accept the plaintiff's claim that the selection of limits form was not properly executed because the named insured on the policy was "Terminix Company of North Carolina" and the named insured on the selection of limits form was "Terminix Company of N.C., Inc." There was no evidence these were separate entities.

Defendant's Exh. 3, which also was admitted without objection, was Terminix's business auto policy with Ace for the period December 31, 2006, through December 31, 2007. Its first page also states "Renewal." It did not contain a selection of limits form, but it did contain endorsement 6, limiting UIM coverage in Virginia to $70,000.

For reasons that were not made clear at trial, Ace also issued to Terminix a business auto policy for the period October 1, 2007, through December 31, 2007. Defendant's Exh. 2 (the "three-month policy"). It was also marked "Renewal." Like Defendant's Exh. 3, it did not contain a selection of limits form, but it did contain endorsement 5, which limited UIM coverage in Virginia to $70,000.

The policy in dispute, Plaintiff's Exh. 1, covered the period December 31, 2007, to December 31, 2008. Its first page states "Renewal" at the top. It contains a signed and dated selection of limits form, but neither box was checked. It also contains endorsement 6, which limited UIM coverage in Virginia to $70,000.

### Waiver of Higher UIM Coverage

Code of Virginia § 38.2-2202(B) requires a "new policy" to contain a notice that UIM coverage will be equal to the amount of liability insurance purchased beyond the statutory minimum unless the insured notifies the insurer of a desire to reduce UIM coverage. In *Government Employees Ins. Co. v. Hall*, 260 Va. 349, 533 S.E.2d 615 (2000), the Court held this statute, by its very terms, does not apply to renewal policies. The plaintiff claims the three-month policy was a "new" policy because it "added significant additional coverages, including a trade or economic sanctions coverage, and the addition of income loss benefits coverage for each and every vehicle under its policy . . ." and it named two new insureds and had a premium adjustment. Plaintiff's Brief, p. 4.

The three-month policy seems to have had an additional premium charge of $32,586, explained by a "Notice of Election" that I could not find and about which counsel have not argued, except as stated above. A comparison of it and Defendant's Exh. 3 shows the same liability limit, a change of the "Business Auto Coverage Form" (from CA00011001 to CA00010306), and the addition of a "2006 Commercial Auto Multistate Forms Revision Advisory Notice to Policyholders" (DA22188). The three-month policy contained fifty-four endorsements and the previous policy had fifty-two. The three-month policy deleted a "Composite Rate Endorsement" (DA5X69602), it added two Texas companies as additional insureds (endorsements 7 and 8), it deleted a "War Exclusion" and added a "Trade or Economic Sanctions" endorsement (which, contrary to what the plaintiff claims in his brief, restricts coverage, but not in a way ever likely to come into play in a motor vehicle accident), it amended eight endorsements, most dealing with changes in the laws of several states, and it added as endorsement 43: "New Jersey Changes – Civil Union."

The plaintiff relies on *Great Am. Ins. Co. v. Cassell*, 15 Va. Cir. 214 (Roanoke 1988). The court there adopted the test from *United States Fid. & Guar. Co. v. Waln*, 395 So. 2d 1211, 1214 (Fla. App. 1981), which held that a policy is "new" if "the original policy has been changed in any material respect."

In an unpublished opinion, the U.S. Court of Appeals for the Fourth Circuit in *Elliott v. Liberty Mut. Ins. Co.*, 1993 U.S. App. LEXIS 188, affirmed the U.S. District Court for the Eastern District of Virginia in rejecting *Cassell*'s definition of a new policy. Instead, that Court used the definition of "renewal" found in Va. Code § 38.2-2212: "the issuance and delivery by an insurer of a policy superseding at the end of the policy period a policy previously issued and delivered by the same insurer, providing types and limits of coverage at least equal to those contained in the policy being superseded." That definition only applies to the section in which it is found; however, it is within Chapter 22 of Title 38.2 "Liability Insurance Policies," in which the UIM statute is found.

The changes in the three-month policy demonstrate what the Fourth Circuit observed in *Elliott*: the state legislatures' "penchant for constantly amending . . . insurance laws." *Elliott*, 1993 U.S. App. LEXIS 188, at *3. What would be a "material" change in an insurance policy is a subject on which Virginia's one hundred fifty plus circuit court judges could reasonably disagree. Would an increased liability limit be material? Would the addition of a named insured because of the acquisition of a subsidiary in a different state? Would an increase in minimum statutorily required liability coverage? Insurers writing coverage in Virginia could find themselves at risk for higher UIM coverage for which a premium was not paid when a business expanded or sought greater protection or when a state legislature changed its insurance laws and an endorsement was added, deleted, or amended.

This itself would inject risk into underwriting and could cause businesses to pay higher premiums for the same coverage.

The definition of "renewal" in Va. Code § 38.1-2212 eliminates this uncertainty, and, like Judge Kellam and the Fourth Circuit, I adopt it. Thus, the policy in dispute is a renewal policy because it was issued by the same insurer, at the end of a policy period, and it provided the types and limits of coverage at least equal to those in the prior policy.

It is clear that Terminix selected UIM coverage of $25,000/50,000/20,000. Mr. Haugh so testified. The first renewal policy contains a signed but undated form limiting the UIM coverage. Defendant's Exh. 4. In addition, as stated above, each policy thereafter, including the one at issue, contains an endorsement limiting UIM coverage in Virginia to $70,000. The unnecessary and incomplete waiver contained in the policy at issue is irrelevant because the original waiver of coverage was still in effect for each subsequent renewal. *Hall*, 260 Va. at 356, 533 S.E.2d at 618; *Canal Ins. Co. v. Lebanon Ins. Ag.*, 543 F. Supp. 2d 521 (W.D. Va. 2008). Like Judge Jones in *Canal Ins. Co.*, I find *White v. National Union Fire Ins. Co.*, 913 F.2d 165 (4th Cir. 1990), upon which the plaintiff also relies, to be of doubtful precedential value. First, the events there occurred when former Va. Code § 38.1-380.2(B) was in effect. Second, the holding is difficult to reconcile with *Hall*.

### Stacking of UIM Coverage

In his complaint filed in March of 2012, the plaintiff sought a declaration that Terminix did not validly reject higher UIM coverage. He did not request an adjudication that the policy at issue permitted stacking of UIM coverage. He has never sought leave to file an amended complaint. A review of the trial transcript shows that he did not raise the issue of stacking at trial. He first raised it in his post-trial brief.

It is well settled that a court may not grant a plaintiff relief not sought in the pleadings. *Drewry v. Doyle*, 179 Va. 715, 720-21, 20 S.E.2d 548, 550-51 (1942). I do not consider an adjudication that the policy permits stacking of UIM coverage to be incidental relief to that requested in the complaint. I have no authority to make the stacking adjudication the plaintiff seeks.